John Lamie, Abingdon, Va., Jo S. Widener, Bristol, Va., for defendants.

**GRUNDY NATIONAL BANK, Plaintiff,**

v.

**Harold D. JOHNSON, et al.,
Defendants.**

**Civ. A. No. 89–0089–A.**

United States District Court,
W.D. Virginia,
Arlington Division.

Oct. 12, 1989.

### MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This matter is before the court on appeal from the United States Bankruptcy Court for the Western District of Virginia. Grundy National Bank ("Bank") appeals from the order of the bankruptcy court entered April 14, 1989, confirming the Chapter 13 plan ("Plan") of Harold D. and Adalene Marie Johnson ("Debtors"), and from the orders denying Bank's motion to dismiss and motion for relief from the stay. This court has jurisdiction pursuant to 28 U.S.C. § 158(a).

### FACTUAL BACKGROUND

On December 28, 1978, the Debtors borrowed $23,665.20 from the Bank ("Loan") and agreed to pay it back over the next ten years with the final payment due in February, 1988. The Loan is secured by a deed

of trust on real estate and a lien on a mobile home. The Bank does not allege that the Loan is secured by the Debtor's primary residence.

In 1983, the Debtors filed for Chapter 13 and their proposed plan was confirmed. On September 14, 1987, the Debtors filed for a hardship discharge, which was granted on October 21, 1987. On February 11, 1988, the bankruptcy court granted the Bank relief from the stay to permit foreclosure on the Loan.

On September 20, 1988, prior to foreclosure by the Bank, the Debtors filed for Chapter 7, which was subsequently converted to Chapter 13 on January 20, 1989. The Debtor's Plan proposed that the Loan be repaid over ten years at the rate of approximately $117 per month. Over the objections of the Bank, the bankruptcy court confirmed the Plan on April 14, 1989.

## CHAPTER 13 PLAN LIMITED TO FIVE YEARS

■ The statutory limit on the repayment period under a Chapter 13 plan is five years.[1] The Plan provides for payments on the Loan over ten years.

Chapter 13 does allow the curing of a default on long term debt and the reinstatement of the original payment schedule for the debt, even if it exceeds five years, if "the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5); *Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir.1982). The pertinent date is the date of the last payment under the note. *Matter*

*of Clark*, 738 F.2d 869, 874 (7th Cir.1984). The date of the last payment originally scheduled for the Loan was February 1988. Because the due date of the last payment on the Loan occurred before even the first payment under the Plan is due, the Loan does not qualify for § 1322(b)(5) treatment.

Chapter 13 provides also for modification of the rights of holders of secured claims. *See* 11 U.S.C. § 1322(b)(2). However, such modification cannot violate the five year time limit. *Id.*[2] Because the Plan proposes to modify the repayment terms the Loan to provide a ten year payback period, in violation of the statutory five year limit, the bankruptcy judge's confirmation of the Plan was improper.

## SECURED CREDITOR'S PREVIOUSLY DISCHARGED DEBT SUBJECT TO CHAPTER 13

The Bank asserts that its right to foreclose on the deed of trust and lien on personal property securing the Loan, on which the Debtors were allegedly personally discharged in the prior Chapter 13 hardship discharge, may not be modified or impaired by the current Chapter 13 proceeding.[3] The first issue presented by this assertion is whether a debtor is prohibited by law from first obtaining a discharge of all personal liability on a secured debt in a previous bankruptcy proceeding and subsequently using Chapter 13 to obtain a modification of that debt under § 1322(b)(2). This issue has not been addressed in any reported decision of this court or of the Fourth Circuit Court of Appeals. How-

---

1. 11 U.S.C. § 1322(c) provides that: "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years."

2. *See also In re Ramirez*, 62 B.R. 668 (Bkrtcy.S. D.Cal.1986) (use of § 1322(b)(2) in conjunction with § 1322(b)(5) to extend maturity date of note beyond the term of the plan, where note did not otherwise qualify for § 1322(b)(5) treatment, is not permitted).

3. A discharge of a secured debt is not permitted in a hardship discharge. 5 Collier on Bankruptcy, paragraph 1328.01[c]. *Compare* 11 U.S.C. § 1328(a) (regular discharge provides for a dis-

charge of "all debts provided for by the plan") *with* § 1328(c) (hardship discharge provides for a discharge of only "all *unsecured* debts provided for by the plan.") (emphasis mine). However, the Bank asserts, and the Debtor does not contest, that the Debtor was discharged on the Loan in the previous Chapter 13 proceeding through the hardship discharge. The record is unclear on this matter. This court assumes, for the purposes of this Opinion, that the Debtor has been discharged on the Loan. Even if the Debtor has not been personally discharged, the conclusions reached in this Opinion and the resulting Order issued would still be applicable and appropriate.

ever, this issue is very closely related to the issue which was exhaustively and excellently discussed in *In re Ligon*, 97 B.R. 398 (Bkrtcy.N.D.Ill.1989).

The issue addressed in *Ligon* was whether a debtor is prohibited, as a matter of law, from first obtaining a discharge of all personal liability on a *home mortgage* in a Chapter 7 case and then using Chapter 13 to force the mortgagee to accept a cure of default and a reinstatement of the original payment schedule under § 1322(b)(5). *Id.* at 400. The only difference between the two issues is that in the instant case the debt is not secured only by the debtor's residence; thus, the debtor is not limited, under Chapter 13, to cure and reinstatement under § 1322(b)(5), but may also use § 1322(b)(2) to modify the terms of the debt. *Id.* at 401, n. 4. The court in *Ligon* noted that in regard to the issue it addressed, there is a clear split of authority. *Id.* at 400.

One line of cases holds that a secured debt on which the debtor has been personally discharged under a bankruptcy proceeding would not be subject to a subsequent Chapter 13 plan because the creditor in such a case would not be a Chapter 13 creditor.[4] The court in *McKinstry* reasoned that the mortgagee would not be a Chapter 13 creditor, as defined in 11 U.S.C. § 101(9), because it has no claim on the note accompanying the mortgage.[5] The

court asserted that it had no claim on the note because "[i]n effect, the discharge extinguishes the debt."[6]

Another line of cases arrives at the opposite conclusion that the lienor in such a case is a Chapter 13 creditor.[7] A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[8] *Id.* at § 101(9)(A). The term "claim against the debtor" includes a claim against the property of the debtor. *Id.* at 102(2). This provision is designed to include non-recourse debt, under which the debtor has no personal liability.[9]

It is settled that creditors may enforce a valid lien after the underlying debt has been discharged. *See Lindsey v. Fed. Land Bank of St. Louis (Matter of Lindsey)*, 823 F.2d 189, 191 (7th Cir.1987); *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir.1986). In 1984, the Code was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, which eliminated "or from property of the debtor" from § 524(a)(2), the provision preventing acts of collection by the creditor of discharged debt, in order to emphasize that the discharge forbids only attempts "to collect, recover or offset any such debt *as a personal liability.*" 2 Collier on Bankruptcy, paragraph 102.03 (quoting § 524(a)(2)) (emphasis mine).[10]

**4.** *In re Johnson,* 96 B.R. 326, 329–30 (D.Kan. 1989); *In re Hundley,* 99 B.R. 306, 307 (Bkrtcy E.D.Va.1989); *In re Russo,* 94 B.R. 127, 130 (Bkrtcy.N.D.Ill.1988); *In re McKinstry,* 56 B.R. 191, 193 (Bkrtcy.D.Vt.1986); *In re Binford,* 53 B.R. 307, 309 (Bkrtcy.W.D.Ky.1985); *In re Brown,* 52 B.R. 6, 7 (Bkrtcy.S.D.Ohio 1985).

**5.** *Id.* (citing *In re Brown,* 52 B.R. 6 (Bkrtcy.S.D. Ohio 1985); *In the Matter of Fryer,* 47 B.R. 180 (Bkrtcy.S.D.Ohio 1985)).

**6.** *Id.* (citing House Report No. 95–595, 95 Cong., 1st Sess. 365–6 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 80 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5866, 5963, 6320).

**7.** *Jim Walter Homes, Inc. v. Saylors (In re Saylors),* 869 F.2d 1434, 1435 (11th Cir.1989); *Downey Savings and Loan Assn. v. Metz (Matter of Metz),* 820 F.2d 1495, 1498 (9th Cir.1987); *In re Smith,* 94 B.R. 216, 217–18 (Bkrtcy.M.D.Ga.

1988); *Matter of Hagberg,* 92 B.R. 809, 814 (Bkrtcy.W.D.Wis.1988); *In re Klapp,* 80 B.R. 540, 542 (Bkrtcy.W.D.Okl.1987); *Matter of Lagasse,* 66 B.R. 41, 43 (Bkrtcy.D.Conn.1986); *In re Lewis,* 63 B.R. 90, 92 (Bkrtcy.E.D.Pa.1986).

**8.** The definitions in Chapter 1 apply in a case under Chapter 13. 11 U.S.C. § 103(a).

**9.** 2 Collier on Bankruptcy at paragraph 102.03 (15th ed. 1989) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 315 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5812, 6272).

**10.** Before the 1984 amendment, § 524(a)(2) of the Code read as follows: "A discharge in a case under this title ... operates as an injunction against ... any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from the property of the debtor, whether or not discharge of such debt is waived...."

The 1984 Amendment makes clear that the underlying debt of a mortgage is not extinguished when it is discharged. Rather, it is, in effect, converted into non-recourse debt. *Saylors*, 869 F.2d at 1436; *Metz*, 820 F.2d at 1498; *Hagberg*, 92 B.R. at 814; *Klapp*, 80 B.R. at 542; *Lagasse*, 66 B.R. at 43. This conclusion avoids a conflict with the frequently stated principle that anything which operates to extinguish a debt necessarily operates to discharge any related liens. 55 Am.Jur.2d *Mortgages* § 394 (1971).

Because a holder of nonrecourse debt is a Chapter 13 creditor, a secured creditor whose debtor is discharged under Chapter 7 from personal liability on the debt underlying the lien, is also a "creditor" for purposes of a subsequent Chapter 13 plan and is therefore subject to that plan. *Saylors*, 869 F.2d at 1436; *Metz*, 820 F.2d at 1498; *Ligon*, 97 B.R. at 402; *Klapp*, 80 B.R. at 542; *Lagasse*, 66 B.R. at 43. As the court in *Ligon* does, this court finds this line of reasoning more persuasive than the *McKinstry* reasoning and concludes that it is just as applicable to the situation where the debt was discharged in a prior Chapter 13 proceeding rather than a Chapter 7 proceeding.

Some cases hold that, even if it were technically permissible to subject a creditor to a Chapter 13 plan calling for a cure and a reinstatement of his debt after a Chapter 7 discharge of the debtor's personal liability on the debt, such a course of action is not to be allowed because it is, in effect, a reaffirmation of debt and is an end run around the policy contained in §§ 524(c) and (d) of not forcing a mortgagee to accept a reaffirmation of debt under Chapter 7. *McKinstry*, 56 B.R. at 193; *Binford*, 53 B.R. at 309; *Brown*, 52 B.R. at 7. One case holds that because this course of action can result in an otherwise impermissible scale-down of secured debt in a situation where the creditor is undersecured, it

should not be allowed.[11] These lines of cases do not point to prohibitions in the Code against the course of action, rather they enunciate policy objections to it. The courts in *Metz* and *Ligon* conclude, and this court concurs in their conclusion, that these objections are dealt with more appropriately in the determination of whether each plan was proposed in good faith rather than through judicially created blanket prohibitions. *Metz*, 820 F.2d at 1498; *Ligon*, 97 B.R. at 403–5.

■ This court holds that, as a matter of law, a debtor which has been discharged from personal liability in a previous bankruptcy proceeding in regard to a secured debt is not prohibited from including the secured debt in a subsequent Chapter 13 plan that provides for the modification of the repayment terms of the debt pursuant to § 1322(b)(2). However, this course of action is to be allowed only if the plan is found by the bankruptcy court to have been proposed in good faith. Thus, the Loan is subject to modification of its terms by a Chapter 13 plan properly confirmed by the bankruptcy court. Of course, findings by the bankruptcy court that the plan is feasible and was proposed in good faith are prerequisites to the confirmation of the plan.

Finally, the Bank incorrectly asserts that the court in *In re Bell*, 700 F.2d 1053 (6th Cir.1983), held that installment redemption is not permissible under the Bankruptcy Code. The court in that case held, instead, that a Chapter 7 debtor may not redeem through installment payments. *Id.* at 1055–56. In fact, that court observed that "Chapter 13 authorizes redemption by installment over an objection by the creditor...." *Id.* at 1057 (citations omitted).

## FINDING THAT PLAN WAS PROPOSED IN GOOD FAITH

The Bank claims that the bankruptcy court erroneously ruled that the Plan was

---

11. *In re Russo*, 94 B.R. 127, 129 (Bkrtcy.N.D.Ill. 1988). An example of a scaledown is as follows. Assume that debtor's loan is for $100,000 but the home (the collateral) is worth only $50,000. The debtor may remove any personal liability on the debt and eliminate the unsecured portion of the debt by obtaining a discharge in Chapter

7, yet may retain the mortgage through cure and reinstatement in a subsequent Chapter 13 proceeding. Thus, he may convert a $100,000 loan on which he has personal liability into a $50,000 non-recourse loan. No attempt at such a scaledown is alleged in the instant case.

not proposed in good faith as required by 11 U.S.C. § 1325(a)(3). Whether a plan has been proposed in good faith is a finding of fact to be made by the bankruptcy judge. *Saylors,* 869 F.2d at 1438; *Metz,* 820 F.2d at 1497; *Public Finance Corp. v. Freeman,* 712 F.2d 219, 221 (5th Cir.1983). *See also In re Baker,* 736 F.2d 481, 482 (8th Cir.1984) (debtor's intentions in filing Chapter 13 plan is a question of fact for the bankruptcy court).

The judge is not to impose "any per se limitations or requirements in respect to 'good faith' " that are not contained in the Code. *Johnson v. Vanguard Holding Corp. (In re Johnson),* 708 F.2d 865, 868 (2d Cir.1983). Rather, he should review each case in the "totality of [its] circumstance," to determine whether there has been an "abuse of the provisions, purpose or spirit" of Chapter 13 by the proposed plan. *Deans v. O'Donnell,* 692 F.2d 968, 972 (4th Cir.1982) (citations omitted).

Congress has recently addressed the issue of repetitive bankruptcies by specifically prohibiting certain repetitive filings. Bankruptcy Amendments and Federal Judgeship Act of 1984, 11 U.S.C. § 109(g). Thus, the fact of successive filings, by itself, would not constitute an abuse. 5 Collier on Bankruptcy, paragraph 1300.40[4]. Because Congress has addressed that issue and other issues which courts have used to give "good faith" a broader meaning, it has shown that it intends that the term good faith should not be expanded beyond its traditional meaning and that any abuse by the debtor should be serious before a Chapter 13 plan is found not to have been proposed in good faith. *Id.* at paragraph 1325.04[3]. *See also Handeen v. LeMaire (In re Le-Maire),* 883 F.2d 1373 (8th Cir. 1989); *In re March,* 83 B.R. 270 (Bkrtcy.E. D.Pa.1988).

Therefore, the bankruptcy court in the instant case, before it confirms any new plan submitted by the Debtors, is to make a finding of whether the plan is a serious abuse of the provisions, purpose, or spirit of Chapter 13, reviewing and taking into account the totality of circumstances, including the past behavior of the Debtors.

Because this court is vacating the order confirming the Plan, it will not review the bankruptcy court's finding that the Plan was proposed in good faith or that it is feasible.

## CONCLUSION

Accordingly, the order below confirming the Plan is VACATED, and this case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion. The orders below denying the Bank's motion to dismiss and its motion for relief from the stay are AFFIRMED; however, the Bank is not prohibited from renewing those motions during the subsequent proceedings.

IT IS SO ORDERED.

The Clerk is directed to send certified copies of this Memorandum Opinion and Order to counsel of record and to the United States Bankruptcy Court for the Western District of Virginia.